Louis RUSZCZYK, President Ex Sell Ent Food Markets, Inc., d/b/a Holley Farm Market, Plaintiff,

v.

SECRETARY OF the UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.

No. CIV-85-271E.

United States District Court, W.D. New York.

March 18, 1986.

Michael S. Stachowski, P.C., Buffalo, N.Y., for plaintiff.

Rodney O. Personius, Asst. U.S. Atty., Buffalo, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Louis Ruszczyk, a grocery store owner, brings this action under 7 U.S.C. § 2023, seeking *de novo* review by this Court of an administrative decision of the United States Department of Agriculture Food and Nutrition Service ("the FNS") to disqualify his business from participation in the Food Stamp Program for a ten-year period. The defendant has moved for summary judgment.

While section 2023 provides for *de novo* review in the district courts, summary judgment is also appropriate under the statute where no genuine issues of material fact are present. *J.C.B. Super Markets Inc. v. United States*, 530 F.2d 1119, 1121 (2d Cir.1976). Thus, in considering this motion, this Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

The plaintiff is President of Ex Sell Ent Food Markets, Inc. ("Ex Sell Ent"), doing business as Holley Farm Market ("the store"), which was authorized by the FNS to redeem food stamps. The record indicates that the store was disqualified from the Food Stamp Program for one month in 1977 due to its employees' selling alcoholic beverages for food stamps in violation of Food Stamp Program regulation 7 C.F.R.

§ 278.2(a).[1] At that time the plaintiff was Vice President and co-owner of Ex Sell Ent. The record also indicates that a representative of the FNS visited the plaintiff's store in October 1982 to discuss with the plaintiff the store's food stamp redemption rate which was unusually high compared to other stores in the area. As confirmed in a letter sent to the plaintiff October 19, 1982, the representative warned the plaintiff during this visit that such a high redemption rate suggested that the selling of ineligible items for food stamps was occurring in his store. The plaintiff was also warned that such violation of regulations could lead to his store's disqualification from the program. R. at 83.[2]

The plaintiff's store was investigated, or "shopped," by FNS personnel March 16, 17, 20 and 22, 1984. The purpose of this investigation was to determine whether Ex Sell Ent personnel would sell undercover FNS representatives ineligible items in exchange for food stamps. According to FNS investigative reports, FNS representatives on four occasions were able to purchase several ineligible items [3] for food stamps at the store, once from the plaintiff and three times from his employees. Each of these transactions included at least thirty percent ineligible items. In addition, three of these transactions included the purchase of a six-pack of beer. R. at 62–76.

As a result of this investigation the FNS, in a letter dated June 6, 1984, formally charged the plaintiff with accepting food stamps for ineligible items in violation of regulation 278.2(a). R. at 36–38. The plaintiff responded, in a letter to the Northeast Regional Office of the FNS dated June

18, 1984, that the violations were due to crowded, confused conditions at the cash register and inexperienced employees rather than any store policy of redeeming food stamps for ineligible items. R. at 14–15.

Nevertheless, upon reviewing the available evidence, the FNS's Northeast Regional Office notified the plaintiff by a letter dated August 30, 1984 that it had determined that the violations did occur at the store and were representative of the normal practice of the store. The FNS consequently recommended pursuant to regulation 278.6(e)(6) that, in lieu of a civil money penalty,[4] the store be disqualified from participating in the Food Stamp Program for a ten-year period. R. at 40–41. This determination was upheld by an Administrative Review Officer January 18, 1985. R. at 30–32.

The plaintiff does not deny that the sales of ineligible items occurred in the store. R. at 15. That fact, coupled with the documentary evidence, leads this Court to conclude that the charged violations indeed took place in the store in March, 1984.

The plaintiff does, however, challenge the validity of the ten-year disqualification sanction imposed upon the store. In his papers opposing the summary judgment motion, he claims that the Administrative Review Officer relied upon FNS Instruction 744–9, issued May 25, 1984 (Exhibit C annexed to defendant's motion for summary judgment), in her decision to sustain the ten-year disqualification penalty. Because the violations had occurred in March 1984, the plaintiff maintains that former FNS Instruction 744–9, issued December 31, 1980 (Exhibit B annexed to defendant's

---

1. 7 C.F.R. § 278.2(a) provides that "[c]oupons shall be accepted by an authorized retail food store only in exchange for eligible food." Eligible food, in turn, is defined as "any food or food product intended for human consumption except alcoholic beverages [and] tobacco * * *." 7 C.F.R. § 271.2.

2. Reference is to the pages of the certified Administrative Record.

3. These ineligible items included transparent adhesive tape, trash bags, soap pads, bar soap, bleach, air freshener, reading material and two packs of cigarettes.

4. 7 C.F.R. § 278.6(f) authorizes the FNS to impose a civil money penalty in lieu of disqualification where the firm's disqualification would inflict hardship upon food stamp households because no other authorized retail store in the area has as large a variety of goods at comparable prices. The FNS's Northeast Regional Office and the Administrative Review Officer considered the availability of public transportation and the proximity of other authorized retail stores, and concluded that the store's disqualification would not impose a hardship on food stamp households in the area. R. at 32.

summary judgment motion) and which authorized a maximum disqualification penalty of only *three* years,[5] controls the assignment of a penalty in his case. He asserts that the Review Officer's reliance upon the superseding 1984 FNS Instruction 744–9 constitutes an *ex post facto* administrative determination.

■ This argument is not persuasive. FNS Instruction 744–9 serves merely to guide FNS personnel in implementing Food Stamp Program regulations; the regulations themselves actually control the FNS's imposition of sanctions under the Program. A careful reading of the Review Officer's opinion establishes that her decision was based not upon FNS Instruction 744–9 but upon Food Stamp Program penalty regulations 7 C.F.R. §§ 278.6(e)(2) and 278.-61(c)(6). R. at 31–32.

These regulations were promulgated in 1982 when Congress amended the Food Stamp Program Act to provide for lengthier disqualification periods in cases where a retail grocery store found to be violating Program regulations had been sanctioned previously by the FNS.[6] These regulations, which authorize a ten-year disqualification period in some cases, appeared in the Federal Register December 17, 1982.[7] Because the plaintiff had constructive notice of these published regulations, it is of no consequence that FNS Instruction 744–9 was not updated to reflect the 1982 amendments until 1984.[8] There has been no *ex post facto* administrative action here where the violations occurred in March, 1984 and the Administrative Review Officer's decision applied penalty regulations that have been in effect since 1982.

■ The Complaint also asserts that the FNS's imposition of a ten-year disqualification sanction is unduly harsh. This Court may overturn a sanction imposed by the FNS only if that penalty is arbitrary and capricious. *Lawrence v. United States*, 693 F.2d 274, 276 (2d Cir.1982); *Willy's Grocery v. United States*, 656 F.2d 24 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982). Such a determination requires an examination of the FNS's application of the relevant regulations and Instruction 744–9 to the facts of this case.

Program penalty regulation 278.6(e)(2) directs the FNS to disqualify a firm for five years if the following criteria have been met: the evidence indicates that it is the firms's "practice to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages in exchange for food coupons" and the firm has been apprised previously of possible Program violations and of possible consequences of Program violations. Penalty section 278.-6(e)(6) enables the FNS to double the length of the disqualification period where a firm subject to disqualification under section 278.6(c)(2) has been earlier sanctioned by the FNS.

The FNS's interpretation of the term "practice to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages"—i.e., major ineligible items—is explained in FNS Instruction 744–9.[9] According to Part IVB(1a) (1980) of this Instruction,[10] a firm is in the practice of selling major ineligible items if (1) the firm has a policy of selling ineligible items, as evidenced by such sales in four

---

**5.** *See* FNS Instruction 744–9 IVA (1980).

**6.** Pub.L. 97–253, Title 1, §§ 175, 176(a), 96 Stat. 781 (1982), codified at 7 U.S.C. § 2021 (1983).

**7.** 47 FR 56471 (1982), codified at 7 C.F.R. § 278.6 (1983).

**8.** FNS Instruction 744–9 was revised in 1984 when many of the provisions of section 278.6 became final. 49 FR 22058 (May, 1984). Although "finalized" in 1984, the two subsections applicable to the plaintiff, 278.6(e)(2i) and 278.-6(e)(6), were deemed retroactively effective as of December 17, 1982.

**9.** It is unclear whether FNS personnel relied upon the 1980 or 1984 FNS Instruction 744–9 in their determination that it was the plaintiff's firm's "practice to sell" major ineligible items. It is unimportant, for the 1980 and 1984 Instructions are *substantially* identical as to the definition of this term. The only substantive difference between the two Instructions is the 1984 version's incorporation of the 1982 penalty amendments.

**10.** FNS Instruction 744–9 IVA (1d) (1984).

"clearly violative" transactions, and (2) the firm has a policy of selling major ineligible items, as established by the sale of such items in three transactions. *See Lawrence v. United States, supra,* at 276–277. These violative transactions must have involved as participants the firm's owner or relatives, members of management, or two clerks who do not consistently refuse to sell ineligible items. See FNS Instruction 744–9 III B(1).[11] Part III A 2(b) of FNS Instruction 744–9 provides that a "clearly violative" transaction is a sale of commodities involving at least thirty percent ineligible items.[12] Finally, Part III A 2(a) (3a) specifies that a six-pack of beer is a major ineligible item.[13]

■ In the instant case, the requirements of section 278.6(e)(2) have been satisfied. First, the record plainly indicates that the plaintiff's store had been earlier warned of possible violations and their ensuing consequences. Next, the record establishes that the plaintiff and his employees sold common ineligible items in four transactions and major ineligible items—six-packs of beer—in three transactions. R. at 62–76. Under the definitions in FNS Instruction 744–9, the firm's actions constitute a practice of selling major ineligible items for food coupons.

The requirements of section 278.6(e)(6) are satisfied as well. Because the plaintiff was previously sanctioned and is subject to a five-year disqualification under section 278.6(e)(2), the FNS is clearly authorized here by section 278.6(e)(6) to double the five-year term and impose a ten-year disqualification sanction upon Ex Sell Ent. Inasmuch as the FNS has followed the relevant Program regulations and FNS Instruction 744–9 in taking administrative action against the plaintiff in this case, this Court concludes that the FNS's imposition of a ten-year disqualification penalty upon

the store is neither arbitrary nor capricious.

Accordingly, it is hereby ORDERED that the defendant's motion for summary judgment is granted.

---

11. FNS Instruction 744–9 IVB (1984). This section further provides that the lack of consistent refusal efforts by two or more clerks will be considered to reflect the operating policy of the firm only in cases where a record of previous compliance action against the firm demonstrates that the owner or manager had been warned about the possible occurrence of violations and possible consequences of such violations in the future. In this case, this requirement is met.

12. FNS Instruction 744–9 IV A 2(b) (1984).

13. · FNS Instruction 744–9 IVA (2a) (3a) (1984).